United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 17, 2004**

Charles R. Fulbruge III
Clerk

Revised December 16, 2004

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Cause No. 03-20983

_____

ROYAL INSURANCE COMPANY OF AMERICA,

Plaintiff-Appellant,

versus

HARTFORD UNDERWRITERS INSURANCE COMPANY,

Defendant-Appellee.

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before JONES, SMITH and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Two insurance companies dispute whether their coverage of claims against a nursing home is primary, excess or pro rata. The district court held that one insurance company's coverage was primary and the other insurance company's coverage was excess. Based on Fifth Circuit precedent concerning Texas law, we disagree and hold that both policies offer primary coverage, which must be prorated. Accordingly, we REVERSE and REMAND for proceedings consistent with this opinion.

## Background

In the underlying suit, the estate and surviving family members of deceased nursing home resident, Lawrence Knutson, brought a wrongful death and survivor action against Riverside Healthcare, Inc. ("Riverside"), for negligence, gross negligence, and employee neglect.

Riverside was the named insured under a primary Commercial General Liability and Health Care Professional Liability policy issued by Hartford Underwriters Insurance Company ("Hartford"), as well as a primary Commercial General Liability/ Resident Health Care Facility Professional Liability policy issued by Royal Insurance Company of America ("Royal"). Because the plaintiffs' original complaint did not obviously trigger Hartford's policy, initially only Royal was notified of the lawsuit. However, the plaintiffs later amended their complaint to trigger coverage under Hartford's policy.

In mid-November 2000, approximately six weeks after the plaintiffs filed their amended complaint, Royal notified Hartford of the underlying suit, expecting Hartford to join in the defense and participate in a mediation scheduled for December 7, 2000. Hartford declined to join in the defense or mediation, maintaining that it had insufficient notice and time to prepare. Royal proceeded with the mediation and settled the case for approximately $950,000, plus $4,770 for the plaintiffs' costs (within the one

million dollar limit of Royal's policy). Royal also paid $132,516.64 for defense costs and fees. Royal made a demand to Hartford for contribution, which Hartford refused. Royal then brought this insurance subrogation action against Hartford to recover half the settlement costs.

The instant appeal arises from the district court's conclusions that (a) the insurers' Professional Liability (PL) rather than Comprehensive General Liability (CGL) coverages pertain to the underlying claim, and (b) Royal's coverage is primary, while Hartford's coverage, because of its "other insurance" provision, is excess (and thus not triggered here). Both companies provided consecutive-year primary insurance policies with limits in the amount of one million dollars each to Riverside for periods covering the underlying action. Both policies provided coverage under identical Commercial General Liability provisions, which afforded pro rata distribution of liability. However, the policies' respective Professional Liability provisions contained differing "Other Insurance" clauses: Royal's clause provided for pro rata coverage;[1] Hartford's clause provided for "excess

---

[1]    Royal's "Other Insurance" Professional Liability Provision reads:

If other valid and collectible insurance is available to the insured
for a loss we cover under Coverage Form, our obligations are limited
as follows:
    a.    Primary Insurance
    This insurance is primary except as described in Paragraph b.
    below.  Our obligations are not affected unless any of the
    other insurances is also primary.  Then we will share with all
    that other insurance by the method described in Paragraph c.
    below.

3

coverage."[2] Resolution of the parties' dispute turns first on whether the underlying suit is governed by CGL or PL provisions. If CGL provisions apply, then liability is undisputedly pro rata, but if PL provisions apply, the companies' respective liability depends on the interrelation of the "other insurance" provisions. While we agree with the district court that PL provisions apply to

. . .
c.    Method of Sharing
If all the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limits of insurance or none of the loss remains, whichever comes first.  If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance to all insurers.

R. Vol. 6, pp. 347–48.

[2]    Hartford's "Other Insurance" Professional Liability Provision reads:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage D of this Coverage part, our obligations are limited as follows:
a.    This insurance is excess over any other insurance other than insurance specifically arranged by you on an umbrella or similar basis to apply excess of this coverage part.
b.    When this insurance is excess, we will have no duty under Coverage D to defend any claim or "suit" that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
c.    When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
   (1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
   (2)    The total of all deductible and self-insured amounts under all that other insurance.
d.    We will share the remaining loss, if any, with any other insurance that is not described in these excess insurance provisions and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

R. Vol. 7, p. 247.

4

the underlying suit, we disagree with the court's conflicts determination.

## Standard of Review

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Mongrue v. Monsanto Co., 249 F.3d 422, 428 (5th Cir. 2001). Interpretation of an insurance policy is a question of law. Gladney v. Paul Revere Life Ins. Co., 895 F.2d 238, 241 (5th Cir. 1990).

## Discussion

### I.    PL vs. CGL Coverage

The district court correctly applied PL provisions to the underlying action.

To determine which coverage provision applies, we must liberally construe the allegations as set forth in the complaint "without reference to their truth or falsity, [] to what the parties know or believe to be the true facts, [] to a legal determination of the true facts," or to the specific legal theories advanced by the parties. See Duncanville Diagnostic Ctr., Inc. v. Atl. Lloyd's Ins. Co. of Texas, 875 S.W.2d 788, 789 (Tex. App. 1994, writ denied) (citing Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 24-25 (Tex.1965)).[3]

---

[3]    See also Adamo v. State Farm Lloyd's Co., 853 S.W.2d 673, 676 (Tex. App.--Houston [14th Dist.] 1993, writ den'd); Continental Cas. Co. v. Hall, 761 S.W.2d 54, 56 (Tex. App. Houston [14th Dist.] 1988, writ den'd).

5

In the underlying suit, the Amended Complaint alleged:

> Defendants failed to properly and timely render appro-priate medical and nursing care by among other things . . . allowing infections, skin ulcers and other disease process[es] to continue without medical intervention . . . failing to meet minimum diet standards for its residents . . . failing to timely transfer Lawrence Knutson to a higher level care facility when appropriate.

> Defendants were negligent and grossly negligent in management, budgeting, and in hiring practices . . . orientation and training practices, and in supervision of employees . . . .

> . . . [breach] of the 'Contract to Provide Nursing Facility Services Under the Texas Medical Assistance Program' . . . by depriving and failing to provide Lawrence Knutson with the care specified under the terms of the contract . . . [and by] . . . various acts and/or omissions . . . .

The gravamen of the plaintiffs' allegations is negligent medical care; but-for the alleged negligence, none of the other claims would have been brought. Hartford's contention that this or any other interpretation that results in double coverage would improperly render the PL coverage duplicative is unavailing. Hartford's argument would read certain terms out of the contract, violating the principle that every term of a contract must be given meaning. <u>Transitional Learning Community, Inc. v. United States Office of Personnel Management</u>, 220 F.3d 427, 431 (5th Cir. 2000).

Here, liberally construing the terms of Hartford's policy, we find it most plausible that Riverside paid additional, higher premiums for PL coverage precisely to cover incidents like this case, where the lawsuit alleges negligence arising out of the rendering of medical services. This construction gives the most

6

meaning to the terms of Hartford's policy and supports the view that Riverside's CGL coverage protected it, for instance, against claims by someone slipping and falling in the waiting room, while its PL coverage protected it from lawsuits by residents harmed by treatment (or lack thereof) received at the facility. This view is consistent with state and federal courts in this circuit that have interpreted insurance policies containing both comprehensive and professional liability provisions. See Harris Methodist Health Sys. v. Employers Reinsurance Corp., No. 3:96-CV-0054-R, 1997 WL 446459, *3-*5 (N.D. Tex. July 25, 1997); Duncanville Diagnostic, 875 S.W.2d at 791; Guar. Nat'l, 909 F.2d at 135-36; Utica Nat'l Ins. Co. of Texas v. Texas Property & Cas. Ins. Guar. Ass'n, 110 S.W.3d 450, 455-57 (Texas Ct. App. 2001). Thus, we agree with the district court that the underlying lawsuit implicated the PL provisions.

## II. Conflict

On the other hand, we depart from the court's view that no conflict existed between the two policies. While the district court's interpretation — that Royal's PL "Other Insurance" clause, by its own terms, is primary, while Hartford's PL "Other Insurance" clause, by its own terms, renders its policy excess — is plausible, it is contrary to controlling Fifth Circuit precedent.

Resolution of this issue turns on the breadth of the Texas Supreme Court's decision in Hardware Dealers Mut. Fire Ins.

7

Co. v. Farmers Ins. Exch. 444 S.W.2d 583 (1969). In Hardware Dealers, two companies — Hardware Dealers Mutual Fire and Farmers Insurance — disputed their liability arising from an auto accident. Hardware Dealers insured Frizzell Pontiac, a garage, for claims of bodily injury or property damage incurred by customers and employees permissively using a car belonging to Frizzell. 444 S.W.2d at 585. Farmers insured John Hyde under a standard automobile insurance policy. Id. at 584. When John Hyde's daughter (who was covered under the policy) collided with another automobile during a test drive, the dispute between the two insurers began. Id. at 584. Both policies had "other insurance" clauses: Hardware Dealer's policy included a provision that excluded from coverage permissive users of Frizzell Pontiac's automobile who were covered by other insurance. Id. at 585. Farmer's policy included an "other insurance" provision that converted its coverage into excess insurance if other insurance coverage existed. Id. at 584.

In a thorough opinion, the state supreme court discussed the three types of "other insurance" provisions: (1) pro rata clauses, which restrict the liability of concurring insurers to an apportionment basis; (2) excess clauses, which restrict the liability of an insurer to excess coverage (that pays out only after the primary coverage is exhausted); and (3) escape clauses, which avoid all liability in the event of additional coverage. Id.

8

at 586.  After evaluating the possible interpretations, the court announced the following rule of interpretation:

> When, from the point of view of the insured, she has coverage from either one of two policies but for the other, and each contains a provision which is reasonably subject to a construction that it conflicts with a provision in the other concurrent insurance, there is a conflict in the provisions.

Id. at 589.  After finding that the two policies conflicted (an escape clause vs. an excess clause), the court concluded that in such circumstances, Texas courts should ignore the conflicting provisions, and instead apportion liability pro rata and require both insurers to defend.  Id. at 590.

This court has cautioned against applying overly narrow constructions of the Hardware Dealers rule.  In one case, we expressly rejected an argument that distinguished Hardware Dealers when an escape clause and a pro rata clause conflicted.  St. Paul Mercury Ins. Co. v. Lexington Ins. Co., 78 F.3d 202, 210 (5th Cir. 1996).  In a footnote, this court explained that "Hardware Dealers set forth a general principle for resolving conflicting 'other insurance' clauses, and that principle controls our decision in this case."  Id. at 210 n.25.  Using the interpretation method counseled by Hardware Dealers, this court determined that

> Sanifill [the insured] would be entitled to full coverage under Landmark's policy were it not for the existence of Centennial's policy; and Sanifill would be entitled to full coverage under Centennial's policy were it not for the existence of Landmark's policy.  In other words, Landmark's pro rata clause conflicts with Centennial's escape clause, so we must prorate liability.

9

Id. at 210.

Measured against St. Paul Mercury's interpretation of Hardware Dealers, the district court read the Supreme Court's decision too narrowly, and incorrectly determined that no conflict existed between the Royal and Hartford provisions. The fact that Hartford's policy contained an escape clause and Royal's policy contained a pro rata clause does not distinguish this case from Hardware Dealers. According to St. Paul Mercury, this case appears to be just another permutation of the conflict explained in Hardware Dealers. Viewed from the perspective of Riverside, the insured, one finds that Hartford provides coverage for the underlying suit if Royal's policy did not exist. Similarly, one sees that Royal provides full coverage for the underlying suit if Hartford's policy did not exist. A "reasonable construction" of the two policies from this perspective yields a conflict. Therefore, the substantive step of Hardware Dealers applies: both Royal and Hartford are liable proportionally, and both had a duty to defend Riverside.[4]

## III. **Defense Costs**

---

[4]    In a related argument, Royal contends that the district court violated Texas's anti-stacking rule. This is incorrect. Under the Texas "anti-stacking rule," if two insurance policies both cover one occurrence, the insured may recover only the limit of one policy. Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 853-54 (Tex.1994). This prevents "self-injury" and other insurance fraud. The district court's interpretation is that Royal's policy constituted primary coverage and Hartford's policy provided excess coverage. This is the way the insurance system works — excess insurers provide additional coverage above and beyond that of primary insurers. This interpretation, although incorrect, does not violate the anti-stacking rule.

As we have concluded that Royal is entitled to contri-bution for settlement costs, there is the lingering issue whether Royal is also entitled to recover defense costs. Because the district court did not address this issue and the case is being remanded for a pro rata liability distribution, we do not reach the issue of defense costs. However, we note the following.

Under Texas law, "the duty to defend does not arise until a petition alleging a potentially covered claim is tendered to the insurer." Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 400 (5th Cir. 1995) (Garwood, J.) (citing Members Ins. Co. v. Branscum, 803 S.W.2d 462, 466-67 (Tex. App.--Dallas 1991, no writ)). Here, Hartford had no duty to defend — and thus cannot be required to pay any of Royal's defense costs — until the underlying suit implicated Hartford's policy and the insured tendered the complaint to Hartford. Based on the record, it appears that Hartford did not have the complaint until six weeks after the plaintiffs amended their complaint, well after Royal began defending the suit. See, e.g., Dist. Ct. Op. (RE Tab 2) at 19. Under Texas law, Royal would only be entitled to post-notification defense cost. However, Royal waived any claim to those costs in its Reply Brief.

**Conclusion**

For the aforementioned reasons, we REVERSE and REMAND for proceedings consistent with this opinion.

11

**REVERSED** and **REMANDED**.