# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 16, 2010

Charles R. Fulbruge III
Clerk

No. 08-20665

WILLBROS RPI, INC.

> Plaintiff - Appellant - Cross Appellee

v.

CONTINENTAL CASUALTY COMPANY

> Defendant - Third Party Plaintiff - Appellee - Cross Appellant

v.

LEXINGTON INSURANCE COMPANY

> Third Party Defendant - Appellant - Cross Appellee

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before WIENER, GARZA, and ELROD, Circuit Judges.

PER CURIAM:

Willbros RPI, Inc. ("Willbros") appeals on various grounds from the district court's grant of summary judgment in its declaratory judgment action against Continental Casualty Company ("CNA"). CNA cross-appeals. These appeals ask us to resolve three questions related to insurance obligations resulting from a botched pipeline drilling project: (1) whether CNA's professional services

exclusion applied; (2) whether CNA's coverage was excess and (3) whether Willbros's indemnity claim was non-justiciable.  We agree with the district court's resolution of all but the second issue.

I

Shell Pipeline Company, L.P. ("Shell") hired Willbros, as general contractor, to construct seventy-five miles of pipeline (the "Bengal project"). Willbros hired Harding Road Boring, Inc. ("Harding"), as subcontractor, to perform directional drilling.  Harding, in turn, subcontracted various aspects of the job.  During the drilling process, one or more pipelines owned by ExxonMobil Pipeline Company ("EMPCo") were damaged. Subsequently, EMPCo and Exxon Mobile Corporation (collectively "Exxon") commenced suit against Shell, Willbros, Harding, and others (the "underlying suit"), alleging that the defendants were negligent in their duties to "analyze, review, supervise, construct, operate, and monitor the work so that EMPCo's pipelines would not be damaged."

Shell tendered its defense and indemnity to Willbros, who accepted the same. Willbros, in turn, tendered its defense and indemnity, as well as that of Shell, to Harding and Harding's insurer, CNA.  CNA previously issued Harding a package policy (the "CNA Policy"). The CNA Policy contains a "blanket" endorsement which extends additional insured coverage, generically, to any person or organization with whom Harding had agreed to add as an additional insured. The district court determined that Willbros qualifies as one such insured by virtue of a written agreement entered into by Harding and Willbros's predecessor, Rogers & Phillips, Inc. ("RPI").[1]

---

[1] Prior to the events giving rise to this suit, Harding and RPI entered into a Master Service Agreement ("MSA") under which RPI, as contractor, routinely awarded, and Harding routinely accepted, subcontractor work.  Among other things, the MSA required Harding to carry liability insurance and to add RPI as an additional insured under all such policies. The MSA states that it is "binding upon and insure [sic] to the benefit of the parties hereto and

No. 08-20665

CNA, however, refused to assume Willbros and Shell's defense and denied Willbros's indemnity demands, contending that it is unclear: (1) whether Willbros, in fact, qualifies as an additional insured under the CNA Policy; (2) whether various provisions exclude coverage; and (3) whether coverage is excess, primary, or co-primary. Nevertheless, it offered to pay fifty percent of Willbros's defense fees and costs under a reservation of rights, but offered nothing to Shell.

Meanwhile, Willbros filed notice of the underlying suit with its own insurer, Lexington, which previously issued Willbros a commercial general liability policy (the "Lexington Policy"). Lexington accepted the tender and began paying defense costs.

Willbros subsequently filed the declaratory judgment suit that forms the basis of this appeal against CNA, seeking a declaration that: (1) Willbros is entitled to 100 percent defense and indemnity under the CNA Policy, and (2) Willbros is entitled to 100 percent defense and indemnity for Shell under the CNA Policy. In response, CNA filed a counter-suit, seeking a declaration that: (1) it has no duty to defend or indemnify Willbros or Shell, and (2) if an obligation to defend is owed, it has no duty to defend beyond fifty percent of defense costs that it has already voluntarily offered to pay under a reservation of rights. Finally, CNA filed a third-party complaint against Lexington seeking virtually the same declaratory relief.

On cross-motions for summary judgment, the district court rejected CNA's contention that the professional services exclusion provided a basis to deny coverage, finding that the underlying suit alleged non-professional negligence as a basis for liability. The district court also found that CNA had a duty to defend Willbros, but that the duty did not begin until the exhaustion of the

their respective successors and assigns." The district court found, and the parties do not dispute, that Willbros, as successor to RPI, succeeded to all rights and benefits previously enjoyed by RPI under the MSA.

3

No. 08-20665

Lexington Policy. This result flowed from the district court's determination that the Lexington Policy was primary and that the CNA Policy was excess. Finally, the district court found that the duty to defend and the duty to indemnify are separate and distinct obligations and that the latter does not arise until the insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages covered by the policy. Because the underlying suit was ongoing at the time of its decision, the district court determined that Willbros's indemnity claims were non-justiciable. This appeal followed.

## II

We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir. 2001). Interpretation of an insurance policy is a question of law. *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir. 1990).

## A

CNA contends that the professional services exclusion in its policy bars coverage of Willbros's defense in the underlying lawsuit. According to CNA, the exclusion applies because the property damage in question arose out of errors in the preparation and/or approval of the surveyor's plans. CNA maintains that the preparation and approval of plans qualifies as a professional service and that the damage alleged in the complaint would not have occurred but for the performance of these activities.

To determine whether an exclusion provision applies, the allegations in the underlying suit must be considered in light of the provisions of the insurance policy. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965). Because the only two relevant documents are the insurance policy and the pleadings of the underlying suit, the inquiry is often referred to as the Eight Corners Rule. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). In applying the Eight Corners Rule, the allegations as set forth in the complaint

4

are liberally construed "without reference to their truth or falsity, to what the parties know or believe to be the true facts, or to a legal determination of the true facts." *See Duncanville Diagnostic Ctr., Inc. v. Atl. Lloyd's Ins. Co. of Texas*, 875 S.W.2d 788, 789 (Tex. App.–Eastland 1994, writ denied) *(citing Heyden Newport Chem. Corp.*, 387 S.W.2d at 24-25). In reviewing the underlying pleadings, we focus on the factual allegations that show the origin of the damages rather than on the legal theories advanced. *See Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 677 (Tex. App.–Houston [14th Dist.] 1993, writ denied) (citing *Cont'l Cas. Co. v. Hall*, 761 S.W.2d 54, 56 (Tex. App.–Houston [14th Dist.] 1988, writ denied), *cert. denied*, 495 U.S. 932 (1990)).

Following the dictates of the Eight Corners Rule, we examine the relevant portions of the CNA Policy and the underlying suit. The professional services exclusion contained in CNA's Policy reads as follows:

> The insurance provided to the additional insured does not apply to . . . "property damage" . . . arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any profession services including:
>
> a. The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> b. Supervisory, or inspection activities performed as part of any related architectural or engineering activities.

In the underlying suit, the Amended Complaint alleged:

> After having an opportunity to review the drilling profile, defendants signed off and approved the plans on or about December 3, 2005. The process of drilling began and the drill bore damaged EMPCo's pipelines.
>
> Defendants owed a duty to use ordinary care to analyze, review, supervise, construct, operate, and monitor the work so that EMPCo's pipelines would not be damaged.

No. 08-20665

\*\*\*

When the two documents are examined together, it is clear that Exxon bases liability at least in part on conduct that does not qualify under the professional services exclusion.  Exxon alleges that "defendants . . . approved the plans," "the drill bore damaged EMPCo's pipelines," and "[d]efendants owed a duty to use ordinary care to analyze, review, supervise, construct, operate, and monitor the work."  Although the allegations include conduct that arguably qualifies as professional service under the terms of the exclusion (*e.g.*, approval of the plans), they also contain conduct that clearly does not fit within the exclusion (*e.g.*, drilling, constructing, operating).

A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  In determining whether any of the allegations would give rise to a claim within coverage of the policy, we read the allegations liberally in favor of the insured, with any doubts resolved in favor of the insured.  *See Guar. Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000).  As we noted in *Primrose Operating Co. v. National American Insurance Co.*, "[i]f *any* allegation in the complaint is *even potentially* covered by the policy then the insurer has a duty to defend its insured."  382 F.3d 546, 552 (5th Cir. 2004) (emphases in original) (internal citations omitted).  An examination of the CNA Policy and the complaint in the underlying suit makes clear that Exxon alleged both professional and non-professional negligence.  Accordingly, CNA had a duty to defend the underlying suit in this case under the Eight Corners Rule.  *See Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 200 (Tex. 2004).

CNA argues that the instant case is distinguishable from *Utica National* because the clause at issue here excludes coverage for property damage *arising*

*out of* the rendering of or failure to render professional services whereas the clause in *Utica National* only excluded injury *due to* the rendering of or failure to render professional services. *See Utica Nat'l Ins. Co.*, 141 S.W.3d at 201. The *Utica National* Court observed that "due to" requires a more direct type of causation than "arising out of," which the Court defined as requiring only a simple causal connection or relation, *i.e.*, but for causation, and not direct or proximate causation. *Id.* at 203 (citing *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999)). We have likewise held "the words 'arising out of,' when used within an insurance policy, are 'broad, general, and comprehensive terms effecting broad coverage.'" *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998) (citing *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951)). Relying on this broader significance of "arising out of," CNA maintains that it only needs to show that the underlying suit alleges liability based on a professional service and that such conduct is a but for cause of the injury for the exclusion to apply.

Even assuming that CNA were correct as to the requisite showing, Exxon's complaint alleges damages that could have occurred even if there was no error in the approval of the plans. For example, even if the survey and its approval were perfect in every respect and the subcontractors simply failed to aim the directional drill correctly, Exxon could still recover. Put differently, conduct that clearly falls outside of the professional services exclusion provides an independent but for cause of the injury.

We have often dealt with cases in which plaintiffs alleged covered and excluded causes for their injuries. Texas courts and this court applying Texas law have recognized a distinction in these cases between cases involving "separate and independent" causation and those involving "concurrent" causation. *See Utica Nat'l Ins. Co.*, 141 S.W.3d at 204. In cases involving separate and independent causation, the covered event and the excluded event

7

No. 08-20665

each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion. *See Guar. Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990) (holding that a hospital's failure to secure windows and to properly supervise a psychiatric patient both proximately caused her suicide and thus a professional exclusion did not apply); *Warrilow v. Norrell*, 791 S.W.2d 515, 526 (Tex. App.–Corpus Christi 1989, writ denied); *Cagle v. Commercial Standard Ins. Co.*, 427 S.W.2d 939, 943–44 (Tex. App.–Austin 1968, no writ). In cases involving concurrent causation, the excluded and covered events combine to cause the plaintiff's injuries. *See Utica Nat'l Ins. Co.*, 141 S.W.3d at 204. Because the two causes cannot be separated, the exclusion is triggered. *See Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 771–72 (5th Cir. 1999) (holding that, under Texas law, liability for failing to follow separate corporate safety standards was necessarily derivative of excluded negligent driving claim); *Burlington Ins. Co. v. Mexican Am. Unity Council*, 905 S.W.2d 359, 363 (Tex. App.–San Antonio 1995, no writ) (holding that an exclusion applied because the negligent supervision of a youth home resident and the assault and battery which caused her injuries were not "separate and independent"); *Thornhill v. Houston Gen. Lloyds*, 802 S.W.2d 127, 130 (Tex. App.–Fort Worth 1991, no writ) (holding that a sale-to-minors exclusion in a general liability policy applied to claims that a store was negligent in selling alcohol to minors and training its employee on permissible purchases because the claims were "related and interdependent").

Because the underlying complaint alleged conduct that could have caused the injury independent of any conduct that would qualify as a professional service, we hold that this case is controlled by the line of cases involving "separate and independent" causation. As discussed, the complaint would give rise to liability even if Exxon's pipeline was damaged by negligent drilling that had nothing to do with the preparation or approval of the plans. When conduct

8

to which the professional services exclusion does not apply provides a separate but for cause of the injury, the insurer must provide coverage. *See Utica Nat'l Ins. Co.*, 141 S.W.3d at 204. Accordingly, we hold that the district court correctly determined that the professional services exclusion does not provide a basis for CNA to deny coverage.

## B

Willbros contends that the district court erred in finding that no conflict exists between the two "Other Insurance" provisions and that CNA's liability for defense does not begin until the Lexington Policy is exhausted. According to Willbros, the policies are in conflict because, read together, it is impossible to determine which coverage applies. Willbros argues that in these circumstances, *Hardware Dealers*[2] applies and liability must be pro rata.

It is undisputed that Willbros is an insured under two liability policies, the Lexington Policy and the CNA Policy. The policies contain differing "Other Insurance" clauses: Lexington's clause provides pro rata coverage;[3] CNA's clause

---

[2] *Hardware Dealers Mutual Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583 (Tex. 1969).

[3] The Lexington Policy contains the following "Other Insurance" provision:

a.    Primary Insurance

This insurance is primary except when b. Excess Insurance, below, applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. Method of Sharing, below [indicating pro rata].

b.    Excess Insurance

This insurance is excess over:

Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

provides excess coverage.[4]   Because both of the policies apply, the companies'
respective liability depends on the interrelation of the "Other Insurance"
provisions.

Although the district court's interpretation—that the policies are not in
conflict because Lexington's "Other Insurance" clause, by its own terms, is
primary, while CNA's "Other Insurance" clause, by its own terms, renders its
policy excess—is reasonable, it is contrary to controlling Fifth Circuit
precedent.[5]   In *Royal Insurance Co. of America v. Hartford Underwriters
Insurance Co.*, we held that virtually identical "other insurance" clauses were in
"conflict" notwithstanding the fact that, as in this case, a plain language reading
of the policies would not have left the insured without coverage.  391 F.3d 639
(5th Cir. 2004).   Because we do not find the instant case distinguishable from
*Royal Insurance*, we hold that the Lexington and CNA "Other Insurance"
provisions conflict and that liability for defense of the underlying suit should be
apportioned on a pro rata basis.

---

[4] The CNA Policy contains the following "Other Insurance" provision:

> This insurance is excess over any other insurance naming the additional
> insured as an insured whether primary, excess, contingent or on any other basis
> unless a written contract or written agreement specifically requires that this
> insurance be either primary or primary and noncontributing.

In its brief, Willbros relies on an "Other Insurance" clause from the main policy form in CNA's
Policy.  But, for purposes of this appeal, CNA's main policy is modified by an endorsement that
applies when coverage involves an additional insured.  Endorsements to a policy generally
supersede and control over conflicting printed terms within the main policy. *See Mesa
Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754 (Tex. App.–Dallas 1999, pet.
denied).  Hence, for purposes of an analysis of "other insurance" provisions applicable to an
additional insured, the above-quoted "Other Insurance" provision applies and not the provision
discussed in Willbros's brief.

[5] The court commends counsel for CNA for his forthrightness in directing the court's
attention to controlling precedent contrary to his position.

No. 08-20665

C

Willbros raises two further interrelated challenges to the district court's judgment. First, Willbros contends that the district court erred in finding the indemnity issues to be non-justiciable. Second, Willbros contends that the district court erred in failing to address the effect of the "Insured Contract" provision of the CNA Policy. Willbros argues that once the district court concluded that Willbros was an "Additional Insured," then the district court necessarily should have found that the "Insured Contract" provision applied. According to Willbros, the district court should have determined that the "Insured Contract" provision entitled it to 100 percent indemnity from CNA.

In its memorandum opinion, the district court correctly observed that the duty to defend and the duty to indemnify are separate and distinct obligations. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-22 (Tex. 1997). The latter generally arises only after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages that are covered by the policy. *Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex. App.–Houston [1st Dist.] 2001, no pet.).

While this rule that indemnity issues must await resolution of the underlying suit is not *per se*,[6] it is applicable to the instant case. As we noted in discussing the professional services exclusion, the underlying suit alleges varying grounds for liability. The defendants in the underlying suit might be liable for mistakes in drilling, for negligently approving the plans, or for nothing at all. In such a case, facts necessary to determine whether a duty to indemnify arises cannot be known until after liability is determined. Thus, because different theories of liability are alleged in the underlying suit that might or might not exclude coverage, the district court was correct to hold the indemnity

---

[6] *See Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

11

issues non-justiciable. *See Farmers Texas County Mut. Ins. Co.*, 955 S.W.2d at 84 (finding it "necessary to defer resolution of indemnity issues until the liability litigation is resolved [when] . . . coverage may turn on facts actually proven in the underlying lawsuit").

Having determined that the duty to indemnify was not ripe when the district court issued its summary judgment, we likewise find no error in its failure to address Willbros's argument that it is entitled to 100 percent indemnity under the "Insured Contract" provision of the CNA Policy. As this determination also turns on facts to be resolved in the underlying lawsuit, it also was not ripe for consideration. *See Id.*

Although the underlying suit was still pending when the district court issued its summary judgment order, it settled while the instant appeal was pending. In light of this development and the fact that other parts of our decision necessitate remand, we also remand the indemnity issues to the district court.

### III

For the aforementioned reasons, we AFFIRM the district court's determination that the professional services exclusion does not apply and that the indemnity issues were non-justiciable, REVERSE the district court's determination that the "Other Insurance" provisions are not in conflict, and REMAND for the district court to apportion liability for defense on a pro rata basis and to consider the now-ripe indemnity issues.

EMILIO M. GARZA, Circuit Judge, with whom JENNIFER WALKER ELROD, Circuit Judge, joins, specially concurring:

I fully agree with the panel opinion.  Although I am inclined to disagree with *Royal Insurance Co. of America v. Hartford Underwriters Insurance Co.*, 391 F.3d 639 (5th Cir. 2004), we are bound by the decision because it is the settled law of this circuit and one panel of this court cannot overrule the decision of another panel.  *See FDIC v. Dawson*, 4 F.3d 1303, 1307 (5th Cir. 1993); *Burlington N. R.R. v. Bhd. of Maint. of Way Employees*, 961 F.2d 86, 89 (5th Cir. 1992); *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir. 1991).

Nonetheless, I encourage the court to revisit en banc our interpretation of what constitutes conflicting "other insurance" provisions under *Hardware Dealers Mutual Fire Insurance Co. v. Farmers Insurance Exchange*, 444 S.W.2d 583 (1969).  Texas Supreme Court cases instruct that, when possible, we should focus on the plain language of the insurance policy.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008) (noting that insurance policies are construed according to the same rules of construction that apply to contracts generally); *Utica Nat'l Ins. Co.*, 141 S.W.3d at 206 (citing numerous cases that reiterate that insurance policies must be interpreted and construed like other contracts); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent."); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984) ("When there is no ambiguity, it is the court's duty to give the words used their plain meaning.").

Indeed *Hardware Dealers* itself teaches that we should not create a "conflict" when the plain language is not reasonably subject to a construction that produces conflict.  In *Hardware Dealers*, the Texas Supreme Court interpreted conflicting "other insurance" provisions in which the conflict had the potential to leave the insured without coverage.  One policy included a provision

that excluded from coverage anyone who was covered by other insurance. 444 S.W.2d at 585. The other policy included an other insurance provision that converted its coverage into excess insurance if other insurance coverage existed. *Id.* at 584. In rejecting a construction that left the insured with no coverage, the court announced the following rule of interpretation:

> When, from the point of view of the insured, she has coverage from either one of two policies but for the other, and each contains a provision which is reasonably subject to a construction that it conflicts with a provision in the other concurrent insurance, there is a conflict in the provisions.

*Id.* at 589. After finding that the two policies were reasonably subject to a construction that they conflicted (an escape clause versus an excess clause), the court concluded that in such circumstances, Texas courts should ignore the conflicting provisions, and instead apportion liability pro rata. *Id.* at 590.

In *St. Paul Mercury Insurance Co. v. Lexington Insurance Co.*, 78 F.3d 202, 210 (5th Cir. 1996), we expressly rejected an argument that distinguished *Hardware Dealers* when an escape clause and a pro rata clause conflicted. The escape clause read, "[W]here the Assured is, irrespective of this insurance, covered or protected against any loss or claim which would otherwise have been paid by the Assurer, under this policy, there shall be no contribution by the Assurer on the basis of double insurance or otherwise." *Id.* at 206. The pro rata clause provided that the insurer "will not pay more than [its] share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid." *Id.* at 207 (alteration in original). Although the insured arguably would have had coverage under the pro rata clause regardless of the conflict, the provisions were nonetheless reasonably subject to a construction that they conflicted because the pro rata clause could be read to cap the insurer's liability at its "share" while the escape clause precluded any coverage under the other

policy. Put differently, a reasonable reading of the two clauses left the insured with less coverage than he would have had but for the existence of the other policy. Thus, after properly applying *Hardware Dealers*, we determined that the policies conflicted and liability must be pro rata. *Id.* at 210.

*Royal Insurance*, however, extended the *Hardware Dealers* rule to situations in which the plain language of the contracts was not subject to a reasonable construction that the other insurance provisions were in conflict. 391 F.3d 639 (5th Cir. 2004). One provision stated, "This insurance is primary except as described in Paragraph b. below. Our obligations are not affected unless any of the other insurances is also primary. Then we will share with all that other insurance by the method described in Paragraph c. below [pro rata]." *Id.* at 640–41 n.1. The other policy provided, "This insurance is excess over any other insurance other than insurance specifically arranged by you on an umbrella or similar basis to apply excess of this coverage part." *Id.* at 641 n.2. Even though, as in this case, the plain language of the policies was not reasonably subject to a construction that the policies conflicted, the court found that the district court read *Hardware Dealers* too narrowly in determining that no conflict existed. The court found that, from the perspective of the insured, either policy would provide full coverage in the absence of the other policy and that, "*from this perspective*," the policies were in conflict. *Royal Ins.*, 391 F.3d at 644 (emphasis added).

This approach incorrectly treated step one of the *Hardware Dealers* test as determinative of step two. *Hardware Dealers*, however, explains that the two steps are separate inquires: The first step instructs us to look at the coverage provided if each policy were the only policy——"When, from the point of view of the insured, she has coverage from *either* one of two policies *but for* the other." 444 S.W. at 589 (emphases added). The second step requires us to evaluate the impact, if any, that the two clauses, when read together, would have on the

coverage of the insured——"each contains a provision which is *reasonably* subject to a construction that it conflicts with a provision in the other concurrent insurance." *Id.* (emphasis added).  To read step one as determinative of step two ignores the "and" in the *Hardware Dealers* test, thus rendering the second step redundant.  *See id.*  This was the error in *Royal Insurance*——the court did not evaluate whether the policies were reasonably subject to a construction that they conflicted.

In my view, the plain language of the "Other Insurance" provisions at issue in this case, just as the language at issue in *Royal Insurance*, is not reasonably subject to a construction that produces a conflict.  The Lexington Policy's "Other Insurance" provision provides that it is primary unless Willbros has other primary insurance available to it, in which case it is only excess insurance.  Conversely, the CNA Policy provides that it is excess unless a written agreement specifically requires that it be primary.  In this case, there is no such written agreement. Thus, under the plain and unambiguous language of the policies, the Lexington Policy is primary and the CNA Policy is excess. When, as here, the language is not reasonably subject to a construction that the provisions conflict, *Hardware Dealers* should not apply.  Because the plain language of the other insurance provisions provides an unambiguous result that does not leave the insured without coverage, I see no reason to artificially create a conflict in order to impose pro rata liability.