# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 16, 2010

No. 09-10973

Lyle W. Cayce
Clerk

STANDARD WASTE SYSTEMS LTD.,

Plaintiff–Appellant,

v.

MID-CONTINENT CASUALTY CO., Mid-Continent Insurance Co.;
OKLAHOMA SURETY CO.,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Standard Waste Systems Ltd. appeals from the district court's grant of summary judgment in favor of Mid-Continent Casualty Co. and Oklahoma Surety Co. (collectively, the Insurers). Standard seeks declaratory relief and money damages arising out of the Insurers' alleged wrongful failure to defend Standard in a personal injury lawsuit in the Eastern District of Oklahoma. On appeal, Standard argues that the district court incorrectly found that the plaintiffs' claims in the underlying lawsuit fell within a policy exclusion and thus that the Insurers had no duty to defend. We affirm.

No. 09-10973

**I**

In the underlying lawsuit, plaintiffs asserted claims for negligence against Standard, J.B. Hunt, and The Scotts Company based on personal injuries the plaintiffs suffered as a result of exposure to a hazardous chemical. The plaintiffs, employees at the Georgia-Pacific paper plant, were injured after handling the contents of a trailer delivered to Georgia-Pacific by J.B. Hunt and loaded with scrap paper by Standard. Initially, the plaintiffs only filed suit against J.B. Hunt. J.B. Hunt filed a third-party complaint against Standard, alleging that Standard negligently caused the plaintiffs' injuries by allowing a toxic chemical to be loaded with the waste paper into the trailer.

The plaintiffs then filed their first amended complaint, which added Standard as a defendant and alleged:

> 10. On or about June 25, 2004, an enclosed trailer under the control of J.B. Hunt and previously loaded with scrap paper at Standard Waste Systems, LTD, was delivered by J.B. Hunt employee/driver Daniel Kuder to the Georgia-Pacific paper plant in Muskogee, Oklahoma. The floor of the trailer also contained a hazardous chemical. As the trailer was accessed, unloaded, swept, and its contents otherwise handled, Plaintiffs . . . were injured by inhaling or otherwise being exposed to the chemical.
>
> 11. J.B. Hunt, individually, and by and through its employees and/or agents, including Daniel Kuder, was negligent in the following respects:
>
> > a.   Improperly loading, transporting, delivering, inspecting for hazardous cargo spillage and/or generally mishandling hazardous chemicals;
> >
> > b.   Failing to decontaminate or improperly decontaminating the trailer prior to its delivery to Georgia-Pacific paper plant;

2

No. 09-10973

    c.    Failing to warn of the existence of the hazardous chemical to those who would forseeably come into contact with the trailer;

    d.    Other acts or omissions to be discovered.

12. Standard Waste Systems, LTD, by and through its employees, was negligent in the following respects:

    a.    Improperly receiving, loading, and/or inspecting the load of waste paper prior to placement in the trailer for transport;

    b.    Failing to adequately advise Daniel Kuder of the existence of a chemical in the load of waste paper prior to loading and transport; and

    c.    Other acts or omissions to be discovered.

Subsequently, the plaintiffs filed their second amended complaint, adding Scotts Company as a defendant. The second amended complaint alleged:

12. On or about June 25, 2004, an enclosed trailer under the control of J.B. Hunt and loaded with scrap paper at Standard Waste Systems, LTD, was delivered by J.B. Hunt employee/driver Daniel Kuder to the Georgia-Pacific paper plant in Muskogee, Oklahoma. The floor of the trailer also contained a hazardous chemical, the type of which can be used in certain fertilizers. Prior to the delivery of the wastepaper to Georgia-Pacific, the trailer was used to deliver fertilizer from Scotts Company. As the trailer was accessed, unloaded, swept, and its contents otherwise handled, Plaintiffs . . . were injured by inhaling or otherwise being exposed to the chemical.

13. J.B. Hunt, individually, and by and through its employees and/or agents, including Daniel Kuder, was negligent in the following respects:

    a.    Improperly loading, transporting, delivering, inspecting for hazardous cargo

3

No. 09-10973

spillage and/or generally mishandling hazardous chemicals;

b.   Failing to decontaminate or improperly decontaminating the trailer prior to its delivery to Georgia-Pacific paper plant;

c.   Failing to warn of the existence of the hazardous chemical to those who would forseeably come into contact with the trailer;

d.   Other acts or omissions to be discovered.

14.   Standard Waste Systems, LTD, by and through its employees, was negligent in the following respects:

a.   Improperly receiving, loading, and/or inspecting the load of waste paper prior to placement into the trailer for transport;

b.   Failing to adequately advise Daniel Kuder of the existence of a chemical in the load of waste paper prior to loading and transport; and

c.   Other acts or omissions to be discovered.

15.   Scotts Company, by and through its employees, was negligent in the following respects:

a.   Improperly loading and/or securing the hazardous chemical such that spillage occurred and caused the presence of the chemical.

b.   Failing to advise or notify J.B. Hunt drivers of the circumstance pertaining to the presence of the chemical.

c.   Other acts or omissions to be discovered.

The plaintiffs' third amended complaint contained identical liability allegations.

Standard has a commercial general liability policy with Oklahoma Surety, and Standard contends that this policy obligated the Insurers to defend it in the

4

underlying action.  Standard tendered both the third-party complaint and the first amended complaint to the Insurers, but the Insurers assert that Standard did not tender the second or third amended complaints.  The Insurers informed Standard that they would not provide a defense to Standard in the underlying suit because the pollution exclusion in the policy barred coverage for the allegations against Standard in the third-party complaint and the first amended complaint.  The pollution exclusion states that the policy does not apply to:

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
> > (a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .
> >
> > . . . .
> >
> > (c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
> >
> > > (i)    Any insured; or
> > >
> > > (ii)    Any person or organization for whom you may be legally responsible . . . .

The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Standard filed suit against the Insurers in Texas state court, seeking a declaratory judgment that the Insurers were required to defend Standard in the underlying litigation according to the terms of its policy.  Standard also seeks damages for various claims arising from the Insurers' alleged violations of the terms of the policy.  The Insurers timely removed to federal district court. Standard filed a partial motion for summary judgment on its claims against

No. 09-10973

Oklahoma Surety for declaratory judgment, breach of contract, and violations of the Texas Insurance Code.  The Insurers filed a cross-motion for summary judgment, arguing that the pollution exclusion in the policy precluded coverage.

The district court found "that all of the liability theories asserted against Standard in the underlying lawsuit fall within the exclusion in the Policy." While noting "that the underlying plaintiffs are somewhat oblique regarding the source of the contamination," the court concluded "that the underlying plaintiffs allege that Standard was negligent only if Standard was the source of the chemical."  The court based this conclusion on the facts that: (1) "none of the various complaints alleges any facts that would support liability on Standard if Standard were *not* the source of the chemical"; and (2) "the liability allegations regarding Standard make sense only in the context of alleging that Standard *was* the source of the chemical."  Accordingly, the court determined that the Insurers did not have a duty to defend Standard in the underlying lawsuit and, because it found there was no coverage, granted summary judgment to the Insurers on all of Standard's claims.  This appeal followed.

## II

We review de novo the district court's grant of summary judgment and apply the same legal standards as the district court.[1]

## III

Standard argues that the district court's grant of summary judgment must be reversed because the Insurers failed to plead the policy exclusion as an affirmative defense.  Under Texas law, a policy exclusion is an affirmative defense,[2] and Federal Rule of Civil Procedure 8(c) requires that "a party must

---

[1] *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010).

[2] TEX. INS. CODE § 554.002 ("Language of exclusion in the contract or an exception to coverage claimed by the insurer or health maintenance organization constitutes an avoidance or an affirmative defense.").

No. 09-10973

affirmatively state any avoidance or affirmative defense" in responding to a pleading. "[F]ailure to abide by Rule 8(c) leads to waiver."[3] However, "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply precisely with Rule 8(c) is not fatal."[4] "[A] defendant does not waive an affirmative defense if it is raised at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond."[5]

The Insurers' failure to plead the policy exclusion as an affirmative defense did not result in unfair surprise or prejudice. The only issue in this case has been the applicability of the pollution exclusion. In their denial letters, the Insurers expressly stated that the pollution exclusion barred any duty to defend Standard in the underlying suit. In the joint status report filed with the district court, the Insurers stated that it was their contention that coverage was barred by the pollution exclusion. In the Insurers' designation of expert witnesses, the Insurers attested that their expert would testify about the applicability of the pollution exclusion. Standard also centered its allegations on the exclusion and, in its petition initiating this coverage suit, asked for a declaratory judgment that the pollution exclusion did not apply. Standard also moved for partial summary judgment and asked the district court to declare the pollution exclusion inapplicable. Therefore, the Insurers did not waive a defense based on the pollution exclusion.

## IV

Standard also argues that the district court erred in finding that the allegations in the underlying suit did not require the Insurers to defend

---

[3] *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008).

[4] *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).

[5] *Rogers*, 521 F.3d at 386 (internal quotation marks omitted).

No. 09-10973

Standard in the underlying litigation. "A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy."[6]   Texas uses the "eight corners" rule to determine whether an insurer has a duty to defend.[7]  This rule "requires the finder of fact to compare only the allegations in the underlying suit—the suit against the insured—with the provisions of the insurance policy to determine if the allegations fit within the policy coverage."[8]  Courts must apply the eight corners rule liberally and resolve any doubts in favor of the insured.[9]  "If *any* allegation in the complaint is *even potentially* covered by the policy then the insurer has a duty to defend its insured."[10]   However, courts must not "read facts into the pleadings," "look outside the pleadings, or imagine factual scenarios which might trigger coverage."[11]

The pollution exclusion in Standard's policy bars coverage for claims of bodily injury from pollutants if Standard was the source of the pollutant.  Thus, the Insurers only had a duty to defend Standard in the underlying litigation if the underlying complaints allege that Standard is liable independent of Standard being the source of the hazardous chemical.  On appeal, neither party contests the district court's finding that the pollution exclusion applied to the allegations in the third-party complaint.  However, the Insurers argue that the court should only consider the first amended complaint in determining whether

---

[6]  *Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 310 (5th Cir. 2010).

[7]  *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004).

[8]  *Id.*

[9]  *Willbros*, 601 F.3d at 310.

[10]  *Primrose*, 382 F.3d at 552 (internal quotation marks omitted).

[11]  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (per curiam).

they had a duty to defend because Standard failed to tender the second and third amended complaints. Because we hold that the Insurers did not have a duty to defend based on the allegations in any of the complaints, we need not resolve this issue.

Standard argues that the underlying complaints would allow the underlying plaintiffs to pursue causes of action against Standard for improper loading and failure to warn, even if Standard was not the source of the pollutant. Standard contends that, because the third amended complaint includes allegations that Scotts Company was the source of the chemical, the allegations in the complaint are reasonably interpreted as alleging that Standard was negligent in loading its waste paper into a trailer that already contained a chemical fertilizer on its floor and in subsequently failing to alert the driver regarding the pre-existing chemical fertilizer. Standard asserts that it is also reasonable to interpret the underlying complaints as alleging that as the waste paper was being loaded into the trailer, it interacted with the chemical fertilizer and itself became contaminated. In that case, Standard argues, the waste paper was not hazardous or a pollutant prior to loading, and thus the pollutant did not originate from Standard and the pollution exclusion is not triggered.

The third amended complaint asserts that Standard was negligent in "[i]mproperly receiving, loading, and/or inspecting the load of waste paper prior to placement into the trailer for transport" and in "[f]ailing to adequately advise Daniel Kuder of the existence of a chemical in the load of waste paper prior to loading and transport." The complaint states that the trailer was "loaded with scrap paper at Standard" and delivered by J.B. Hunt. It also alleges that "[t]he floor of the trailer also contained a hazardous chemical, the type of which can be used in certain fertilizers." It notes that "[p]rior to the delivery of the wastepaper to Georgia-Pacific, the trailer was used to deliver fertilizer from Scotts Company."

No. 09-10973

The allegations in the underlying complaints fall within the policy exclusion as all allegations against Standard are premised on Standard being the source of the chemical.  The first and third amended complaints specifically allege that Standard was negligent for failing to inspect the paper and failing to warn the driver of the existence of a chemical in the paper *prior* to loading and transport, which would require Standard to be the source of the chemical.  While the complaints allege that Standard was negligent in loading the paper, the facts do not suggest that Standard would be liable for any reason other than loading paper that was already contaminated or failing to warn the driver that the paper was contaminated prior to loading.

The third amended complaint includes allegations that Scotts Company was the source of the chemical.  However, despite these allegations, no facts in the complaint suggest that Standard knew or should have known that the chemical was present in the trailer and should have notified the driver or refused to load the paper as a result.  Accordingly, we agree with the district court that the complaint alleges that either: (1) Standard is liable if it was the source of the chemical; or, alternatively, (2) Scotts Company is liable if it was the source of the chemical. All of the allegations against Standard in the underlying complaints fall within the pollution exclusion, and thus the Insurers did not have a duty to defend Standard in the underlying litigation.

*    *    *

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.