# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2016

Lyle W. Cayce
Clerk

No. 15-10443

HARTFORD CASUALTY INSURANCE COMPANY; HARTFORD LLOYDS INSURANCE COMPANY,

Plaintiffs - Appellees

v.

DP ENGINEERING, L.L.C.; JOHN SCROGGINS,

Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, SOUTHWICK, and COSTA, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

DP Engineering, L.L.C., and its employee, John Scroggins, were sued by individuals injured in an industrial accident at an Entergy nuclear power plant. The present suit concerns DP Engineering's insurers, Hartford Casualty Insurance Company and Hartford Lloyds Insurance Company. The two Hartford companies sought a declaratory judgment that they had no duty to defend or indemnify DP Engineering in those lawsuits. The district court granted summary judgment to the insurers. DP Engineering appeals. We AFFIRM in part and REVERSE and REMAND in part.

No. 15-10443

## FACTUAL AND PROCEDURAL BACKGROUND

DP Engineering, L.L.C., entered into an agreement to provide engineering services for a project at an Entergy nuclear power plant in Arkansas. John Scroggins, an engineer with DP Engineering, worked on the project. Entergy needed to remove and refurbish a "stator," which is a cylindrical 520-ton component of the electricity-generation system. The stator was lifted out of its cradle and secured to a gantry. The gantry with its load was then to be moved on tracks across a large deck. At an opening in the deck, the stator would be lowered, placed onto a vehicle, and moved outside the building for maintenance work. At some point in the procedure, the gantry collapsed. Both the gantry and stator crashed to the floor, causing massive property damage to Entergy's plant. One worker died. Others were injured.

Entergy sued DP Engineering and Scroggins, along with others involved in the project, for breach of contract and negligence (the "Entergy lawsuit"). DP Engineering, Entergy, and the other companies involved in the stator project were sued by the estate of the deceased worker and three injured workers. Scroggins was not a defendant in these four lawsuits (collectively the "personal injury lawsuits").

DP Engineering's insurers, Hartford Casualty Insurance Company and Hartford Lloyds Insurance Company (together "Hartford"), sought a declaratory judgment that there was no duty to defend or indemnify under their policies. Hartford Casualty had issued a primary insurance policy and an umbrella policy to DP Engineering. Hartford Lloyds had issued only a primary insurance policy. All three policies contained an exclusion of coverage for injuries or damages arising out of DP Engineering's professional services.

DP Engineering asserted counterclaims against Hartford, seeking a declaratory judgment that Hartford had a duty to defend and bringing a breach of contract claim for Hartford's refusal to accept the defense. Both parties

moved for summary judgment.  The district court granted Hartford's motion for summary judgment, holding there was no duty to defend or duty to indemnify, and denied DP Engineering's motion.  The district court reasoned that the allegations in the underlying lawsuits only related to DP Engineering's professional engineering services, and so the policies' professional services exclusions applied.  The court entered judgment for Hartford on Hartford's claims and DP Engineering's counterclaims and awarded taxes and costs against DP Engineering.  DP Engineering timely appealed.

## DISCUSSION

We review the district court's grant of a summary judgment *de novo*. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163 (5th Cir. 2006). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Texas law applies in this diversity suit. *See Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 391 (5th Cir. 2014).

DP Engineering contends the district court erred in entering summary judgment for Hartford on the duty to defend and duty to indemnify under the policies.  The parties have presented arguments only about whether the professional services exclusion precludes policy coverage, so we limit our review to that question.  We address the duty to defend and then the duty to indemnify.  DP Engineering also complains about the district court's resolution of its counterclaims, which we address last.

### I.     *Hartford's Duty to Defend*

DP Engineering claims Hartford is not relieved of its duty to defend under the policies.  Hartford has a duty to defend if the facts alleged in the

pleadings would give rise to any claim covered by the policy. *See National Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). To determine whether a lawsuit would give rise to a covered claim, Texas law applies the "Eight Corners Rule." *See Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 309 (5th Cir. 2010). Under that rule, a court looks only at the insurance policy itself and the pleadings in the complaint in the underlying suit. *Id.* The court focuses "on the factual allegations that show the origin of the damages rather than on the legal theories advanced." *Id.* The insurer has the burden to prove an exclusion applies. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). We resolve doubts about an exclusion in favor of the insured. *Id.* at 368–69. "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (5th Cir. 2008). For example, where the policy excludes coverage for professional services as it does here, if the underlying complaints allege injury occurred both because of negligent professional services *and* negligent services of some other kind, Hartford has to defend the entire lawsuit. *See Willbros*, 601 F.3d at 312.

We first review the relevant policy language. The professional services exclusions in each policy contain slightly different language but are substantively the same. They exclude coverage for bodily injury or property damage "arising out of" DP Engineering's "rendering of or failure to render any professional services . . . ." An injury arises out of professional services if there is but-for causation, "though not necessarily direct or proximate causation," between the injury and the professional services. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004).

We must also determine what is meant by "professional services," a term which is defined similarly in each policy. Such services "include[] . . . [t]he

preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; and . . . [s]upervisory, inspection, architectural or engineering activities."[1]  The umbrella policy also contains an exclusionary endorsement titled "Designated Professional Services," which indicates that the professional services are those described on Form IH 12 01.  That Form states that the excluded professional services are "Engineering Services."[2]

We also find caselaw instructive.  A service is "professional" if it requires "specialized knowledge or training," not solely because a professional performs the service.  *Atlantic Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476–77 (Tex. App.—Dallas 1998, pet. denied).  Professional services are "mental or intellectual [work], rather than physical or manual" and involve "a practical dealing with affairs" of others.  *Maryland Cas. Co. v. Crazy Water Co.*, 160 S.W.2d 102, 105 (Tex. Civ. App.—Eastland 1942, no writ). Another Texas appellate court held the following allegations fall within a professional engineering services exclusion: failing to make daily inspections, negligently designing an excavation system, and negligently drafting plans. *See Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 262–64 (Tex. App.—Texarkana 2001, no pet.).

We have distinguished professional services from those that are non-professional or administrative.  *See National Cas. Co. v. W. World Ins. Co.*, 669

---

[1] The only differences between the quoted definition and the definition in the other two policies is that the other two definitions do not include "shop drawings," "field orders," or "architectural" activities.  These minor differences, however, do not change the meaning of the definition for our purposes.

[2] To the extent DP Engineering argues that we should find this policy language ambiguous and look to the definition of "engineering services" in TEX. OCC. CODE § 1001.003, we reject such an argument.  We agree with a Texas appellate court that did not find "engineering services" in a similar policy exclusion ambiguous.  *See Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 263–64 (Tex. App.—Texarkana 2001, no pet.).

F.3d 608, 615 (5th Cir. 2012); *Willbros*, 601 F.3d at 310. While professional services require specialized knowledge or training and involve the exercise of judgment, administrative services usually occur in the "execution" of a decision that was based on professional judgment. *Western World*, 669 F.3d at 615–16. For example, approval of a drilling plan is a professional engineering service, but the execution of the plan, which involves construction and conducting drilling operations in accordance with the plan, does not clearly fall within the exclusion. *See Willbros*, 601 F.3d at 310–11.

We now examine the factual allegations in the underlying lawsuits and compare them to the policy language. As a preliminary matter, DP Engineering does not direct us to specific allegations that describe non-professional services. Instead, DP Engineering lists out the allegations in all five complaints and states that "[o]ne, some or all of the above" allegations do not arise out of DP Engineering's professional services. Undertaking our own more focused analysis, we look at the facts alleged in the Entergy lawsuit[3] and then the personal injury lawsuits.

The Entergy complaint alleges DP Engineering breached its contract and was negligent because it: (1) was involved in a decision not to perform a load test on the gantry to ensure it could lift the stator; (2) knew or should have known of certain inaccurate and false statements by the gantry engineer, Claus Frederiksen, that it was not possible for the gantry to undergo a load test and such a test was unnecessary because the gantry had previously lifted heavier objects; (3) had concerns about the failure to anchor the gantry to the

---

[3] DP Engineering briefly complains that the district court should not have discussed provisions of the contract between Entergy and DP Engineering, which was attached to the Entergy complaint, in considering the factual allegations in the Entergy lawsuit. Hartford responds that because the contract was attached to the complaint, it is a part of the pleadings. We do not decide this argument because we do not rely on any of the provisions in the Entergy and DP Engineering contract to decide whether there is a duty to defend.

building itself but did not act on those concerns; (4) failed to provide qualified and competent personnel; and (5) did not comply with applicable standards in Entergy's manual requiring a load test. The Entergy complaint alleges that Scroggins was negligent because he was an agent of DP Engineering and had superior knowledge and skill, which obligated him to disclose defects and deficiencies of which he was aware.

The above allegations relate to the professional judgment that DP Engineering and Scroggins exercised in designing, reviewing, and approving the plan to remove the stator. All the factual allegations suggest that DP Engineering or Scroggins designed and approved the plan, and none suggest that they were involved in negligently executing it.

In the personal injury lawsuits, the complaints allege DP Engineering gave "engineering advice" on the stator project and that DP Engineering employees were used by other defendants for "non-engineering tasks." The personal injury complaints list 17 allegations against all the defendants, which include allegations of negligence in the plan to construct and use the crane, the decision to continue removing the stator after problems arose, and the hiring, supervision, and training of independent contractors. Against DP Engineering specifically, the personal injury complaints allege DP Engineering: (1) had insufficient policies and procedures to hire and train qualified engineers and other staff; and (2) provided incompetent and unqualified engineers and other staff. The allegations relating to punitive damages state that DP Engineering

> ignored the appropriate and applicable standards regarding the design evaluation[,] . . . . improperly used an assumption of transverse frame loading that was less than two percent of the handled load[, failed to conduct] a required load test[,] . . . . did not inspect all load bearing welds before and after a load test[, and] . . . . was unable to provide to the NRC inspection team any alternate approved standard for the design and testing of the crane . . . .

The personal injury complaints describe how the defendants, including DP Engineering, improperly planned and designed the stator project. None of the allegations indicate that the accident happened because of something akin to "subcontractors simply fail[ing] to aim the directional drill correctly" in accordance with a properly designed plan, *Willbros*, 601 F.3d at 311, or, "a worker . . . simply [making] a mistake in the implementation of the design," *Gore Design Completions*, 538 F.3d at 372. Instead, looking at the factual allegations together, the underlying lawsuits "arise out of" DP Engineering's alleged failure to properly exercise its professional, engineering judgment on the stator project.

For example, one allegation is that the defendants "[chose] not to inspect the load bearing welds before the lift was attempted." Hartford emphasizes the description of these acts as choices, but we do not find that description determinative. We must look at the underlying factual allegations, rather than the way they are pled. *Sitech Eng'g Corp.*, 38 S.W.3d at 264. This allegation describes a professional service because inspecting equipment to ensure it is properly designed and constructed before using the equipment for a complex project such as this requires special knowledge, expertise, and training. *See Susman Godfrey*, 982 S.W.2d at 476–77. Other allegations address the defendants' failure to require a load test, failure to provide a safe and effective plan for stator removal, and failure to properly determine the appropriate equipment to safely complete the project. These actions all require special knowledge and expertise.

As mentioned, the personal injury complaints also contain general statements that DP Engineering employees aided in "non-engineering tasks" under the direction of Entergy's and another defendant's project managers. We have rejected a "bald statement that certain (unspecified) acts were non-professional" and instead focused on whether any of the alleged facts described

non-professional conduct. *See Admiral Ins. Co. v. Ford*, 607 F.3d 420, 426 (5th Cir. 2010). The facts alleged do not include administrative, non-professional activities conducted by DP Engineering. DP Engineering asserts that "using a crane, constructing a crane, providing a crane, welding a crane, [and] assembling a crane" are not professional services because "the average construction worker" who performs such activities would not need an engineering degree to do so. While this statement may be true, DP Engineering points to no factual allegation that it or its employee negligently used a crane, constructed a crane, or welded a crane. While DP Engineering and others allegedly "[chose] not to ensure the crane was properly assembled," we read this language to describe DP Engineering's negligence in failing to inspect the crane after it had been constructed, an inspection that would require professional expertise.

Finally, the personal injury lawsuits contain allegations that DP Engineering negligently hired, trained, supervised, or retained its employees and contractors. These allegations fall within the professional services exclusion because they are "related [to] and interdependent" with the allegedly negligent rendition of professional services, rather than "independent and mutually exclusive." *See Duncanville Diagnostic Ctr., Inc. v. Atl. Lloyd's Ins. Co. of Tex.*, 875 S.W.2d 788, 791–92 (Tex. App.—Eastland 1994, writ denied). The negligent hiring allegations do not trigger a duty to defend.

The underlying lawsuits fall within the professional services exclusion because the factual allegations in the underlying complaints describe injuries that "arise out of" DP Engineering's and Scroggins's allegedly negligent engineering services. Therefore, the district court correctly entered summary judgment for Hartford that there was no duty to defend.

No. 15-10443

## II.    Hartford's Duty to Indemnify

"An insurer's duty to defend and indemnify are distinct and separate duties." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).  An insurer may have a duty to defend a lawsuit but may not have a duty to indemnify the insured.  *Id.*  Alternatively, an insurer may not have to defend a lawsuit but may eventually have a duty to indemnify.  *See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743–45 (Tex. 2009); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011).  These duties can arise independently of one another because the duty to defend is determined by pleadings, but the duty to indemnify is determined by the facts that are eventually ascertained in the underlying lawsuit.  *See D.R. Horton-Texas*, 300 S.W.3d at 744.  Accordingly, the duty to indemnify typically cannot be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ slightly from the allegations.  *See Griffin*, 955 S.W.2d at 83–84; *Peachtree*, 647 F.3d at 254–55.

The Texas Supreme Court has identified one situation when a duty to indemnify can be resolved solely on the pleadings in the underlying lawsuit. *See Griffin*, 955 S.W.2d at 84.  In *Griffin*, the court held that an insurer can obtain a declaratory judgment on its duty to indemnify based only on the pleadings in the underlying suit if "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id.* (emphasis omitted).  In that case, the plaintiff alleged a drive-by shooting caused injuries, and the insurance policy covered "auto accident[s]." *Id.*  The court reasoned that there was no set of facts that could be proved in the underlying lawsuit that could transform an alleged drive-by shooting into an auto accident covered under the policy.  *Id.*

When a case is not analogous to *Griffin*, an insurer cannot obtain resolution of the duty to indemnify solely on the basis of the pleadings in the

10

underlying lawsuit.  *See D.R. Horton-Texas*, 300 S.W.3d at 744–45.  The insurer may have to wait to resolve its duty to indemnify until after a trial in the underlying litigation because facts established at trial determine the duty to indemnify.  *Id.* at 745.  Alternatively, the parties may offer extrinsic evidence to prove or negate the insurer's duty to indemnify if the underlying lawsuit never goes to trial or if trial does not develop the facts necessary to determine policy coverage.  *Id.* at 744; *Peachtree*, 647 F.3d at 254–55.

Hartford argued below, and the district court accepted, that *Griffin* allowed the court to adjudicate the duty to indemnify based on the pleadings in the underlying lawsuits.  Hartford claimed that like *Griffin*, "nothing will change the fact that advice provided with respect to the movement and removal of a 550 ton stator requires specialized knowledge and training."  The district court concluded that because there was no duty to defend, there was also no duty to indemnify.  The court stated "none of the allegations in any of the underlying lawsuits states facts that would invoke coverage under any of the three insurance policies at issue."

Hartford submits that one of our court's recent decisions supports the district court's resolution.  *See LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664 (5th Cir. 2015).  We held there that an insurer had no duty to defend the insured, a corporation that operated a detention center, in an inmate's Section 1983 lawsuit.  *Id.* at 671–72, 674.  A medical services exclusion applied based on allegations in the complaint that officials at the detention center refused to provide the inmate additional doses of medicine.  *Id.* at 671, 674.  The court held there was also no duty to indemnify, finding *Griffin* applicable.  *Id.* at 668 n.4, 672, 674.  "In the context of this case, it follows that there is no duty to indemnify for the same reasons . . . there is no duty to defend . . . ."  *Id.* at 672.

No. 15-10443

*LCS Corrections Services* is distinguishable.  The sole alleged act of negligence in *LCS Corrections Services* was a failure to provide medication to an inmate.  *Id.* at 671.  The *Griffin* exception applied there because the panel reasoned that no facts proved at a trial could transform the failure to provide medication into something that was not medical services.  *Id.* at 674.  Unlike in *LCS Corrections Services*, the underlying lawsuits here involve complex facts and multiple allegedly negligent parties.  The factual allegations do not negate any possibility that Hartford will ever have a duty to indemnify because, as DP Engineering argues, there is "an array of possible factual and legal scenarios," that could have caused the crane and stator to fall, some of which may create coverage.  The allegations in the underlying lawsuits here do not conclusively foreclose that facts adduced at trial may show DP Engineering also provided non-professional services, which would be covered under the policy.  Unlike the alleged drive-by shooting in *Griffin*, which under no set of facts could become an "auto accident," the rendition of professional services alleged here could co-exist with the rendition of non-professional services that contributed to the accident.

Because we hold that *Griffin* does not apply, we reverse the district court's grant of summary judgment to Hartford on the duty to indemnify.  The district court should not have determined the duty to indemnify based on the pleadings in the underlying lawsuit.  *See D.R. Horton-Texas*, 300 S.W.3d at 744–45; *Peachtree*, 647 F.3d at 254–55.  The district court may need to "defer resolution of indemnity issues until the liability litigation is resolved." *Griffin*, 955 S.W.2d at 84.  Alternatively, if trials in the underlying lawsuits do not occur or if the trials do not resolve all factual issues related to coverage, the parties may offer additional evidence to determine whether Hartford has a duty to indemnify.  *See D.R. Horton-Texas*, 300 S.W.3d at 744.

12

No. 15-10443

### III.   DP Engineering's Counterclaims

DP Engineering argues the district court erred in adjudicating its counterclaims *sua sponte* without giving the required notice.   Hartford responds that once the district court decided there was no duty to defend, DP Engineering's counterclaims necessarily failed.

DP Engineering's counterclaims relied on Hartford having a duty to defend under the policies.  DP Engineering presented all its legal arguments about Hartford's duty to defend in response to Hartford's motion for summary judgment, as well as in its own cross-motion for summary judgment. Accordingly, DP Engineering had ample opportunities to present arguments in support of its counterclaims as to why a duty to defend existed.  *See British Caledonian Airways Ltd. v. First State Bank of Bedford*, 819 F.2d 593, 595–96 (5th Cir. 1987) (citing 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2720 (3d ed.)).  There was no error in entering judgment against DP Engineering on its counterclaims because those claims were necessarily resolved after the court considered all the arguments and determined that as a matter of law, Hartford had no duty to defend.  *See Jensen v. Snellings*, 841 F.2d 600, 618 (5th Cir. 1988) (entering summary judgment *sua sponte* when an insurer's duty to defend was argued at length to the district court).  We agree with the district court's resolution of the duty to defend, and therefore DP Engineering's counterclaims.  DP Engineering's counterclaims do not address Hartford's duty to indemnify, which we hold the district court erred in resolving at summary judgment.

We AFFIRM the district court's grant of summary judgment on Hartford's duty to defend and the district court's resolution of DP Engineering's counterclaims related to the duty to defend.  We REVERSE the district court's grant of summary judgment to Hartford on its duty to indemnify and REMAND for further proceedings consistent with this opinion.