# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30874

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2016

Lyle W. Cayce
Clerk

SOLSTICE OIL & GAS I, L.L.C.,

      Plaintiff - Appellant

v.

SENECA INSURANCE COMPANY, named as Seneca Insurance Company, Incorporated; COMMERCE AND INDUSTRY INSURANCE COMPANY,

      Defendants - Appellees

v.

OBES, INCORPORATED, doing business as Ole Brook Directional Services,

      Defendant – Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-2417

Before REAVLEY, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

---

   * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30874

This appeal arises from an insurance coverage dispute related to a failed oil drilling operation. As the district court prematurely addressed whether the insurers had a duty to indemnify, we VACATE and REMAND for further proceedings.

## I. Background

After identifying an oil prospect near Avondale, Louisiana, Solstice Oil & Gas I, L.L.C. (Solstice) and JAM Petroleum, LLC (JAM) entered into an agreement under which Solstice would provide financing as the nonoperating interest holder, while JAM would act as operator of the leases and supervise drilling operations. JAM then contracted with a Texas corporation, Obes, Incorporated (Ole Brook), to provide directional drilling services and create a well that would eventually lead to the oil prospect. Directional drilling is the practice of controlling the direction and deviation of a nonvertical wellbore to a predetermined underground target—in other words, drilling diagonally.

After Ole Brook began its directional drilling work in November of 2011, the project experienced significant difficulties. Ole Brook's directional drilling tools malfunctioned, resulting in the well deviating from its planned course by more than 400 feet. After unsuccessfully attempting to correct the deviation, Ole Brook subcontracted with PinPoint Drilling and Directional Services, LLC to provide directional drilling tools and survey data for the remainder of the drilling project. After experiencing additional complications, Ole Brook was officially discharged from the project on December 27, 2011.

Surveys in January showed that the well was even farther off-course than initially thought, and JAM subsequently concluded that the well could no longer be used and abandoned it. JAM then attempted to drill a second side-track well to reach the oil prospect, but this well was determined to be a dry hole and the project was abandoned.

No. 15-30874

Thereafter, Solstice sued Ole Brook in the Eastern District of Louisiana, alleging that Ole Brook's actions resulted in a misshaped well that caused "physical injury to the well and to the integrity of the wellbore." Solstice also sued Ole Brook's insurers, Seneca Insurance Company (Seneca) and Commerce and Industry Insurance Company (C&I), under Louisiana's Direct Action Statute. Ole Brook subsequently filed counterclaims against Solstice and crossclaims against Seneca and C&I. Seneca agreed to defend Ole Brook in its litigation with Solstice, pursuant to a reservation of rights to deny coverage.

Seneca had provided Ole Brook with a $1 million commercial general liability policy, while C&I had provided a $2 million follow-form excess policy. Both policies contained substantially identical language that provided coverage in the event that Ole Brook "becomes legally obligated to pay as damages" as a result of "property damage."[1]

Not all witnesses listed on Ole Brook's witness list were deposed during discovery. Nonetheless, Seneca and C&I filed separate motions for summary judgment arguing that they were entitled to summary judgment on the claims and crossclaims against them because their insurance contracts with Ole Brook did not cover, or specifically excluded from coverage, the damages allegedly suffered by Solstice as a result of Ole Brook's conduct. In particular, both insurers argued that Solstice could not show that Ole Brook damaged any property, and, in the alternative, that their insurance policies contained a number of exclusions that foreclosed any duty to indemnify Ole Brook. In their opposition to summary judgment, Solstice and Ole Brook pointed to testimony

---

[1] Both policies define "property damage" as:
    a. Physical injury to tangible property, including all resulting loss of use of that property. . . . ; or
    b. Loss of use of tangible property that is not physically injured.

indicating that the well was drilled in a crooked way[2] and contended that property damage occurred.

The district court granted Seneca's and C&I's motions for summary judgment, concluding that the insurers did not have a duty to indemnify Ole Brook, and entered final judgment under Rule 54(b). This appeal followed.

## II. Standard of Review

We review a choice of law determination de novo. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012). Questions of subject matter jurisdiction and grants of summary judgment are likewise reviewed de novo. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170 (5th Cir. 2009). We "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

## III. Discussion

### A. Choice of law

We deem Texas law to apply to this case.[3] "In a diversity case such as this one, federal courts must apply the choice of law rules in the forum state in which the court sits." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*,

---

[2] For example, Solstice's Ryan Stevenson called the well "a bad hole" because it "bent back and forth" and was over 750 feet off-target. Solstice manager Gordon Samson stated that the whole wellbore was damaged, stating: "We were aware that some tools were lost . . . what was damaged specifically was the entire wellbore." JAM's onsite representative, Thomas Dirks, testified that a survey showed "a very irregular hole" with "doglegs and turns and twists that shouldn't have been there." Solstice's expert, Bill Griffin, stated in his affidavit that a survey showed "pronounced dogleg severity indicating significant and abrupt bends in the wellbore." JAM's company man, Eddie Bond testified that the well was damaged due to "having the formations open . . . to the drilling fluids," which would lead to the hole "deteriorating on its own."

[3] The district court concluded that any distinctions between Texas and Louisiana law were not outcome determinative. Following our request for supplemental briefing on the justiciability question, however, some of the parties argued that Texas law and Louisiana law would differ in their approaches to prematurity. Because it is clear that Texas law applies, we need not address in detail the differences between the two.

352 F.3d 254, 260 (5th Cir. 2003).  This case was filed in the Eastern District of Louisiana.  We therefore apply Louisiana's choice of law rules, which generally dictate that the laws of the state where an insurance policy was issued—here, Texas—should govern.  *See Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 F.3d 609, 610, 614 (5th Cir. 2006) (applying Mississippi law in a direct action claim related to a Louisiana car accident because Mississippi was "the state where the insurance policy was negotiated and formed"); *Champagne v. Ward*, 893 So. 2d 773, 789 (La. 2005) (applying Mississippi law in a direct action claim because the policy was negotiated and formed in Mississippi, even though defendant was a Louisiana resident and accident occurred in Louisiana); *Harrison v. R.R. Morrison & Son, Inc.*, 862 So. 2d 1065, 1070 (La. Ct. App. 2003) (collecting cases and concluding that "Louisiana courts have often interpreted insurance policies according to the law of the state where the policy was issued"); *Palm v. Stewart*, 858 So. 2d 790, 795 (La. Ct. App. 2003) (applying Texas law in a direct action claim and noting that Texas has a "compelling interest . . . in regulating insurance contracts written in Texas and issued to Texas residents").

None of the parties involved in this suit is a citizen or resident of Louisiana.  The insurers, Seneca and C&I, are both New York corporations, while Solstice is a Delaware limited liability corporation.  Most importantly, the insurance policies were issued to Ole Brook, a Texas corporation with its principal place of business in Texas.  In fact, the policies themselves indicate the parties' intent for Texas law to apply: the Seneca policy includes changes to the policies to comply with Texas law, while the C&I policy includes a Texas policy disclosure notice and a Texas amendatory endorsement.  The only significant connection to Louisiana is that the failed drilling operations took place there.  Therefore, Texas law applies to this case.

*B. Texas law*

"In liability insurance policies generally, an insurer assumes both the duty to indemnify the insured, that is, to pay all covered claims and judgments against an insured, and the duty to defend any lawsuit brought against the insured that alleges and seeks damages for an event potentially covered by the policy . . . ." *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (citation omitted). "Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless '*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*'" *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004) (quoting *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997)). Thus, we may only reach the merits of the insurers' duty to indemnify if "[n]o facts can be developed" in the liability case between Solstice and Ole Brook that could create a possibility of insurance coverage. *See Griffin*, 955 S.W.2d at 84. "Accordingly, the duty to indemnify typically cannot be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ slightly from the allegations."[4] *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, ___ F.3d ____, 2016 WL 3552312, at *6 (5th Cir. June 29, 2016) (citing *Griffin*, 955 S.W.2d at 83–84).

We have held that justiciability is a federal law question even when state substantive law applies. *Home Ins. Co., of Ind. v. Moffitt*, 990 F.2d 625, 1993 WL 117762, at *3 (5th Cir. 1993). We have nonetheless adopted the *Griffin* framework in addressing justiciability where the insurance policy is governed

---

[4] In granting the insurers' motion for summary judgment, the district court relied primarily upon our unpublished decision in *PPI Tech Servs., L.P. v. Liberty Mut. Ins. Co.*, 515 F. App'x 310, 314 (5th Cir. 2013). However, that case did not address the justiciability of duty to indemnify because, by the time of appeal, all parties acknowledged that the indemnity question was moot. *See id.*

by Texas law.[5]  *See, e.g.*, *Hartford Cas.*, 2016 WL 3552312, at \*6 (affirming summary judgment for insurer on duty to defend but reversing district court's grant of summary judgment because "[t]he factual allegations do not negate any possibility that [the insurer] will ever have a duty to indemnify"); *Willbros RPI, Inc. v. Constr. Cas. Co.*, 601 F.3d 306, 313 (5th Cir. 2010) (noting, in an insurance case related to a directional drilling project gone awry, that the duty to indemnify was nonjusticiable because the "defendants in the underlying suit might be liable for mistakes in drilling, for negligently approving the plans, or for nothing at all. In such a case, facts necessary to determine whether a duty to indemnify arises cannot be known until after liability is determined").  Thus, we refer to the *Griffin* framework to decide justiciability.[6]

Here, the duty to indemnify is nonjusticiable because Seneca's actions foreclose any argument that the "same reasons that negate the duty to defend likewise negate any possibility [Seneca] will ever have a duty to indemnify." *Griffin*, 955 S.W. 2d at 84 (emphasis omitted).  Seneca has made no attempt to argue that it had or has no duty to defend; to the contrary, it conceded at oral argument that the amended complaint's allegations require a defense and it has, therefore, defended this case under a reservation of rights letter.[7]  The

---

[5] The justiciability principle outlined in *Griffin* is derived from the Texas Constitution's prohibition on advisory opinions, *see* 955 S.W.2d at 83, which are also prohibited under federal law, *see Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 198 (5th Cir. 2011). Thus, federal and Texas law are consistent in this regard.

[6] *Cf. Flagg v. Stryker Corp.*, 819 F.3d 132, 137 (5th Cir. 2016) (en banc) (looking to state law to determine whether the district court properly exercised diversity jurisdiction in the improper joinder context); F. Andrew Hessick, *Cases, Controversies, and Diversity*, 109 NW. U. L. REV. 57, 77–90 (2014) (arguing that federal courts sitting in diversity should employ state justiciability doctrines, as doing so would be consistent with the text of Article III and would promote the goal of providing an alternative federal forum for the resolution of state law claims).

[7] Specifically, Seneca's counsel pointed out that a defense was denied under the original complaint, which alleged only a breach of contract.  Counsel then stated: "The complaint was amended; it tracked the language of the underground resources and equipment hazard endorsement.  Look at the eight corners: there was a duty to defend.  We

fact that the pleadings support coverage under the policy suggests that there is at least *some* "possibility [it] will . . . have the duty to indemnify." *Id.*; *see also Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 626 (E.D. Tex. 2003) ("The Court has found no Texas case in which the Court announced that, applying Texas state law, the duty to defend was triggered, and simultaneously decided that the duty to indemnify could not arise for lack of coverage."). Of course, it is also possible that the facts will develop in such a way that a duty to indemnify will not exist because of one of the following: (1) there is no need for indemnity due to no liability being found on the part of Ole Brook; (2) the facts found do not support a conclusion that property damage within the policy definition occurred; or (3) the trial findings demonstrate that one of the exclusions apply.

C&I argues that the duty to indemnify is justiciable at this juncture because the plaintiff, insured defendant, and insurers are joined in the same proceedings by way of Louisiana's Direct Action Statute. Despite this procedural posture, however, it is readily apparent that "facts can be developed" at trial that would support a finding that at least some of Ole Brook's conduct related to the failed directional drilling project triggered coverage under the relevant policies. *Griffin*, 955 S.W. 2d at 84. Beyond the already existing testimony indicating that the well was drilled in a crooked fashion, Ole Brook also points to a number of witnesses who were not deposed but who could testify at trial on relevant issues such as subcontractors, surveyors, and consultants. The summary judgment evidence does "not conclusively foreclose that facts adduced at trial" may emerge that could create

---

reserved rights because some things were covered, some things were not covered." For its part, C&I's counsel stated that, at the point of the summary judgment motion, the duty to defend was a "foregone conclusion." The duty to defend is not before us, and we in no way imply that Seneca should not have defended or continue to defend this case.

No. 15-30874

a duty to indemnify by the insurers. *Hartford Casualty*, 2016 WL 3552312, at *6.

In sum, whether the insurers have a duty to indemnify is nonjusticiable at the current stage of the litigation.[8]   We therefore VACATE the district court's grant of summary judgment and REMAND for further proceedings.

---

[8] The applicability of any exclusions in the Seneca and C&I policies are likewise nonjusticiable at this juncture, as none of them have been conclusively proven.

9