# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-51099

United States Court of Appeals
Fifth Circuit

**FILED**

September 27, 2016

Lyle W. Cayce
Clerk

MARKEL AMERICAN INSURANCE COMPANY,

> Plaintiff–Appellee,

v.

HUIBERT VERBEEK; ENGELBRECHT VERBEEK,

> Defendants–Appellants.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:14-CV-143

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:*

This insurance dispute concerns whether a directors and officers liability policy requires Plaintiff–Appellee Markel American Insurance Company ("Markel") to defend and indemnify Defendants–Appellants Huibert Verbeek and Engelbrecht Verbeek (collectively, the "Verbeeks") for litigation filed in state court. The Verbeeks were the owners and officers of the company to which

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-51099

Markel provided the insurance policy at issue. The parties filed cross motions for summary judgment on Markel's duty to defend, and the district court granted judgment in Markel's favor. The court also dismissed the Verbeeks' counterclaims and granted summary judgment sua sponte in Markel's favor on its duty to indemnify. We AFFIRM.

## I. BACKGROUND

The Verbeeks were the owners and officers of Color Star Growers of Colorado, Inc. ("Color Star"), a wholesale distributor of flowers. Color Star had an insurance policy issued by Markel, which included directors and officers liability coverage (the "D&O Policy" or "Policy") with a $1,000,000 aggregate limit of liability. On appeal, the parties dispute whether the D&O Policy obligates Markel to defend and indemnify the Verbeeks for litigation brought against them in Texas state court.

### A.    The State Court Litigation

The alleged facts asserted in the underlying state court litigation are as follows. In 2012, Color Star refinanced its debt by entering into loan agreements—referred to as a credit facility—with several companies. Regions Bank ("Regions") led a bank syndicate that funded the credit facility's senior debt portion, which totaled $52.5 million. Comerica Bank ("Comerica") was a co-lender of Regions and funded one-third of that senior debt portion. Solutions Capital I, LP ("Solutions") and MCG Capital Corporation ("MCG Capital") issued a loan pursuant to a subordinated credit agreement, which provided $13.5 million for the credit facility's junior debt portion. Solutions is a wholly-owned subsidiary of MCG Capital. MCG Capital and Solutions both entered into the subordinated credit agreement with Color Star.

Color Star defaulted on its obligations under the credit facility and filed for bankruptcy. The entities that financed the credit facility—Regions, Comerica, MCG Capital, and Solutions (collectively, the "state court

2

plaintiffs")—sued the Verbeeks and others in Texas state court. MCG Capital and Solutions sued first, filing their lawsuit in December 2013. In February 2014, Regions filed its lawsuit, which was subsequently consolidated with the lawsuit by MCG Capital and Solutions. Comerica has intervened in the litigation.

Both lawsuits allege that the Verbeeks participated in a scheme to fraudulently induce the state court plaintiffs to enter into the loan agreements with Color Star. Specifically, the lawsuits assert that the Verbeeks and others procured the credit facility by misrepresenting Color Star's financial condition, which included overvaluing Color Star's inventory by at least $6.6 million. For instance, the pleadings of Regions and of MCG Capital and Solutions allege that they would not have entered into the loan agreements "[h]ad [they] known [Color Star's] true financial condition." Comerica similarly claims that it agreed to be a co-lender based on the misrepresentations concerning, among other things, the value of Color Star's inventory.

The Verbeeks tendered the state court litigation to Markel, requesting that it provide a defense pursuant to the D&O Policy. Markel denied coverage, citing the Policy's exclusion for "Bankruptcy and Creditors" (the "Creditor Exclusion"). Markel informed the Verbeeks that it interpreted the Creditor Exclusion to preclude coverage for "lawsuits brought by any Color Star creditor so long as the credit transaction forms the basis of the claims brought, and damages sought, by the Color Star creditor." The Creditor Exclusion, according to Markel, therefore barred coverage of the underlying state court litigation because "[t]he loan transaction and resulting unpaid debt form[ed] the basis of every one of [the] causes of action" asserted in the underlying litigation.

## B.    Procedural History

On the same day Markel denied coverage, it filed suit in federal district court. In its complaint, Markel sought declaratory judgment that it did "not

owe a duty to defend or indemnify the Verbeeks from and against the claims being asserted against them" in the state court litigation. The parties filed cross motions for summary judgment on Markel's duty to defend. The Verbeeks also asserted counterclaims, alleging that Markel breached the D&O Policy and violated the Texas Insurance Code by failing to provide a defense.

The magistrate judge issued a report recommending that the district court grant summary judgment on the duty to defend in favor of Markel and dismiss the Verbeeks' counterclaims. The magistrate judge explained that the Creditor Exclusion precluded the Verbeeks' claim for "defense costs under the D&O Policy." The district court adopted the recommendation and granted summary judgment for Markel. The district court also entered final judgment, which included declaratory judgment that the Creditor Exclusion "precludes coverage for the underlying consolidated actions."

The Verbeeks moved to vacate the final judgment pursuant to Federal Rule of Civil Procedure 59(e), claiming that the district court had improperly ruled sua sponte for Markel on its duty to indemnify. Specifically, they argued that the judgment should be vacated on Markel's duty-to-indemnify claim because (1) the parties' summary judgment motions only addressed the duty to defend and (2) the issue of indemnity was not ripe until there was a final resolution of the underlying state court litigation. Markel countered that summary judgment was appropriate because the Creditor Exclusion also precluded its duty to indemnify. The district court denied the motion, and this appeal followed.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Martin Res. Mgmt. Corp. v. AXIS Ins. Co.*, 803 F.3d 766, 768 (5th Cir. 2015). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). "The district court's interpretation of an insurance contract and its exclusions is a question of law and is subject to de novo review." *Delta Seaboard Well Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 602 F.3d 340, 342–43 (5th Cir. 2010).

## III. DISCUSSION

### A.    Duty to Defend

The parties do not dispute that Texas law governs this diversity case. Under Texas law, "the insurer's duty to defend is governed by the 'eight corners rule,' which holds that the duty to defend is determined solely from the terms of the policy and the pleadings of the third-party claimant." *Ooida Risk Retention Grp. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009). "Only these two documents are ordinarily relevant to the duty-to-defend inquiry." *Id.* If the underlying pleadings "*only* allege[] facts excluded by the policy, . . . the insurer is not required to defend." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). In conducting its review, a court "look[s] to the factual allegations showing the origin of the damages claimed, not to the legal theories or conclusions alleged." *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014).

"[T]he insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Northfield Ins. Co.*, 363 F.3d at 528 (emphasis in original). This Court "resolve[s] doubts about an exclusion in favor of the insured." *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 427 (5th Cir. 2016). "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Id.* (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)).

The Creditor Exclusion states in pertinent part:

> The Insurer shall not be liable to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** brought or maintained by or on behalf of:
>
> . . .
>
> Any creditor of a **Company** or **Organization** in the creditor's capacity as such, whether or not a bankruptcy or insolvency proceeding involving the **Company** or **Organization** has been commenced.

As to the duty to defend, the issue is whether Markel is "not . . . obligated to defend" the underlying state court litigation because it is a "**Claim** brought" by Color Star's creditors in their "capacit[ies] as" creditors.

The magistrate judge reasoned that the Creditor Exclusion applies because "all of the damages currently plead[ed] in the underlying complaints arise out of an allegedly fraudulently induced loan." The Verbeeks respond that this conclusion was erroneous. They argue that the "capacity" requirement means the Creditor Exclusion is triggered only by claims brought by creditors "to recover for the debt owed by Color Star." As the Verbeeks aver, the Creditor Exclusion does not apply to "claims against directors and officers [for] allegedly inaccurate financial statements, which are at best peripheral to the debt." In other words, the Creditor Exclusion only precludes coverage for lawsuits that allege contractual liability, such as breach-of-contract claims that seek recovery "under the terms of the credit facilities." Applied to the Verbeeks, the Creditor Exclusion would only bar claims that seek to hold them liable in their role as personal guarantors of the credit facility.

The Verbeeks further contend that coverage is required because at least MCG Capital—Solutions' parent company—is not bringing suit in its capacity as a creditor. Rather, MCG Capital, as stated in its state court pleadings, was the "administrative agent" of the subordinated credit agreement and an "investor," and, as such, is suing in those capacities.

No. 15-51099

We disagree with the Verbeeks and hold that the Creditor Exclusion precludes the duty to defend. Under Texas law, whether an exclusion applies requires a court to focus on the "factual allegations showing the origin of the damages claimed." *Ewing Constr. Co.*, 420 S.W.3d at 33. The factual allegations in the underlying state court litigation indicate that all damages originate from the loans the Verbeeks and others fraudulently induced the state court plaintiffs to extend to Color Star. MCG Capital and Solutions allege that their "action arises out of" the Verbeeks' "egregious, fraudulent, and negligent misconduct, which induced" the $13.5 million junior loan and the subordinated credit agreement. Regions similarly pleaded that it sought to recover "damages related to a $66 million loan package that [the Verbeeks and others] conspired to procure through a massive accounting fraud." Because the origin of the damages stems from the state court plaintiffs' roles as defrauded creditors of Color Star, the Creditor Exclusion bars coverage.

In addition, we are not persuaded by the Verbeeks' contention that MCG Capital brought the lawsuit in its capacity as an investor rather than creditor. Although MCG Capital alleged that the $13.5 million junior loan was an "investment," the factual allegations indicate that MCG Capital's expected returns were limited to the principal and interest payments on the loan. Indeed, as the magistrate judge explained, there is no allegation that any state court plaintiff "anticipated any extra profit based on Color Star's performance, or any risk beyond the commercial risk that a debtor will not repay the agreed principal and interest on a loan." MCG Capital's use of the label "investment" in its pleadings does not bring the underlying litigation outside of the scope of the Creditor Exclusion because the factual allegations reveal that the origin of the damages is the fraudulently induced loans.

Further, the Verbeeks' interpretation is unreasonable in light of the Policy's defined terms. The Verbeeks argue that the Creditor Exclusion applies

7

only to creditors' contractual claims—that is, "claims brought by creditors of Color Star suing . . . to recover on the debt." However, under Texas law, "[i]t is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct." *PPI Tech. Servs., L.P. v. Liberty Mut. Ins. Co.*, 515 F. App'x 310, 314 (5th Cir. 2013) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam)). Given that the alleged facts giving rise to the underlying litigation relate entirely to the state court plaintiffs' loan agreements with Color Star, those plaintiffs are suing in their capacity as creditors.[1]

## B.    Duty to Indemnify

On the same day the district court granted summary judgment on the duty to defend, it also granted summary judgment sua sponte on the duty to indemnify in Markel's favor. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Atkins v. Salazar*, 677 F.3d 667, 678 (5th Cir. 2011) (per curiam) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)); *see* Fed. R. Civ. P. 56(f)(2)–(3).

"We review for harmless error a district court's improper entry of summary judgment *sua sponte* without notice." *Atkins*, 677 F.3d at 678. "A district court's grant of summary judgment *sua sponte* is 'considered harmless if the nonmovant has no additional evidence or if all of the nonmovant's

---

[1] The Verbeeks also argue that the Creditor Exclusion does not apply to the underlying litigation because the conduct alleged in the suit occurred before the state court plaintiffs became creditors. Specifically, they reason that at the time of the alleged misrepresentations, the state court plaintiffs were only "*potential* creditors" and thus the underlying state court lawsuits were not brought in the plaintiffs' capacities as creditors. This argument was not raised before either the magistrate judge or district court judge and is therefore waived. *See XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008).

additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact.'" *Id.* (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1398 (5th Cir. 1994)).

The Verbeeks contend, and Markel does not dispute, that the district court failed to give sufficient notice prior to granting summary judgment sua sponte on Markel's duty to indemnify.[2] Yet we need not decide if the district court erred because any such error was harmless.

An insurer's duty to indemnify is "distinct and separate" from its duty to defend. *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) (per curiam). "An insurer may have a duty to defend a lawsuit but may not have a duty to indemnify the insured" or, conversely, a duty to indemnify but not defend. *Hartford Cas. Ins.*, 827 F.3d at 430. This is in part because while "the duty to defend is determined by pleadings," the duty to indemnify usually "is determined by the facts that are eventually ascertained in the underlying lawsuit." *Id.* "Accordingly, the duty to indemnify typically cannot be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ slightly from the allegations." *Id.*

Texas law provides, however, that a court may determine the duty to indemnify "solely on the pleadings in the underlying lawsuit" in certain circumstances. *Id.* In particular, under the Texas Supreme Court's decision in

---

[2] In articulating the standard for the notice required prior to granting summary judgment sua sponte, the Verbeeks cite *Love v. Nat'l Med. Enters.*, 230 F.3d 765 (5th Cir. 2000), which stated that the district court must give the losing party at least ten days' notice. *Id.* at 770. Yet this ten-day requirement "was grounded in a strict reading of the text of the pre-2009 version of Federal Rule of Civil Procedure 56(c), which provided that the nonmoving party must be served with a summary judgment motion at least ten days prior to the time fixed for the hearing." *Atkins*, 677 F.3d at 678 n.15. The current version of Rule 56 does not contain any ten-day requirement, although it does mandate "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f).

*Griffin*, a court may decide the duty to indemnify before the underlying litigation is terminated if "the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." 955 S.W.2d at 84 (emphasis omitted). Yet if the case "is not analogous to *Griffin*, an insurer cannot obtain resolution of the duty to indemnify solely on the basis of the pleadings in the underlying lawsuit." *Hartford Cas. Ins.*, 827 F.3d at 430.

Here, when granting summary judgment on Markel's duty to indemnify, the district court explained that the Creditor Exclusion "applies to exclude coverage for both defense and indemnity." In so holding, it cited *Griffin* and our decision in *LCS Corrections Services, Inc. v. Lexington Insurance Co.*, 800 F.3d 664 (5th Cir. 2015), which applied *Griffin*. As such, the district court implicitly held that the *Griffin* exception was applicable: its "ruling on the duty to defend . . . also control[led] the duty to indemnify." *LCS Corr. Servs.*, 800 F.3d at 672 (citing *Griffin*, 955 S.W.2d at 84).

The Verbeeks argue that the district court's ruling was not harmless because the court did not consider evidence that would have raised a genuine dispute of material fact on the duty to indemnify. The only evidence they cite, however, is the liquidation plan entered in Color Star's bankruptcy proceeding after the underlying litigation had commenced. They argue that this plan "stripped" the state court plaintiffs' "prepetition rights as creditors, if any." The Verbeeks argue that the underlying litigation is not "brought by creditors of Color Star, in the creditor's 'capacity as such,'" because the liquidation plan "eliminated or resolved" "their creditor claims."

We find the Verbeeks' argument unavailing in light of the plain language of the Creditor Exclusion. The Creditor Exclusion applies to "any **Claim** brought or maintained by" a creditor. The fact that the state court plaintiffs may no longer have creditor rights is immaterial: they had such rights when

10

they "brought" the underlying litigation. The Verbeeks' argument—which relies on the state court plaintiffs' current status as purported noncreditors—rewrites the Creditor Exclusion such that it applies only when a claim is both "brought *and* maintained by" a creditor. But, the Creditor Exclusion is written in the disjunctive. As such, the fact that the state court plaintiffs were creditors when they brought the suit is sufficient to trigger the Creditor Exclusion.

**C.    The Verbeeks' Counterclaims**

The Verbeeks filed counterclaims, alleging that Markel breached the D&O Policy by failing to defend them. The Verbeeks contend that, as a result of this breach, they are entitled to attorneys' fees for the underlying litigation and an 18% penalty for such costs under the Prompt Payment of Claims Act. Tex. Ins. Code Ann. § 542.060 (West 2009). "To prevail under the Prompt Payment of Claims Act, the plaintiff must establish that there is a claim under the insurance policy for which the insurer is liable." *PPI Tech. Servs.,* 515 F. App'x at 314. Because we hold that Markel is not liable under the D&O Policy, we affirm the district court's dismissal of the Verbeeks' counterclaims. *See id.* at 315.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.